## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WILLIAM ISAACS,
Plaintiff,

Case No. 1:12-cv-591
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's memorandum

in opposition (Doc. 18) and plaintiff's reply memorandum (Doc. 19).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in August 2008, alleging disability since July

1, 1999[1], due to a head injury, broken nose, broken eye socket, back and neck problems, crushed

sinus cavity, and memory problems due to a car accident that occurred on June 14, 2008. (Tr.

220). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a de novo hearing before Administrative Law Judge (ALJ)

---

[1]The ALJ noted that counsel for plaintiff indicated in a pre-hearing memorandum that June 14, 2008, might be a
more reasonable disability onset date. (Tr. 24). However, because plaintiff never made a formal request to amend
the alleged disability onset date, the ALJ considered whether plaintiff was disabled as of July 1, 1999, the originally
alleged onset date. (*Id*.). The ALJ found that regardless of the onset date, at no relevant point has plaintiff been
disabled. (*Id*.).

Christopher B. McNeil on October 13, 2010.  Despite acknowledging receipt of the hearing

notice on September 22, 2010 (Tr. 165), plaintiff failed to appear for the hearing.  (Tr. 48-49).

Plaintiff's counsel[2] appeared at the ALJ hearing together with a medical expert (ME) and a

vocational expert (VE), both of whom testified at the hearing.  (Tr. 46-75).  On December 29,

2010, the ALJ issued a decision denying plaintiff's DIB and SSI applications.  Plaintiff's request

for review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

[2]Plaintiff's counsel for this appeal also represented plaintiff in the administrative proceedings.

2

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2008.

> 2. The [plaintiff] has not engaged in substantial gainful activity since July 1, 1999, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

> 3. The [plaintiff] has the following severe impairments: lumbosacral strain, a depressive disorder, and a panic disorder with agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

3

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, he can lift or carry 50 pounds occasionally and 25 pounds frequently; push or pull 25 pounds with hand or foot controls; sit, stand, or walk about six hours each in an eight-hour workday; never use ladders, ropes, or scaffolds; and no more than occasionally stoop or crouch. Due to his mental limitations, he can understand, remember, and carry out simple and some complex instructions; sustain attention for extended periods of two-hour segment[s]; and tolerate occasional and superficial contact with co-workers, supervisors, and the public. Due to stress tolerance limitations, the job cannot have fast pace or strict time or production pressures. The claimant is also able to adapt to work settings where duties are routine and predictable.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1970 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 1, 1999, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

---

[3] Plaintiff's past relevant work was as a landscaper, frame shop manager, and bar stocker. (Tr. 38).

(Tr. 27-40).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving

weight to treating physician's opinion, thereby violating the agency's own regulations).

5

## D. Specific Errors

The pertinent medical findings and opinions have been adequately summarized in plaintiff's Statement of Errors and will not be repeated here.  (Doc. 12 at 3-6).  Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that the ALJ erred by: (1) failing to find "good cause" for plaintiff's absence from the ALJ hearing and rendering a decision without the benefit of plaintiff's testimony; (2) finding several of plaintiff's impairments were "not severe" and failing to account for both the "severe" and "non-severe" impairments in the residual functional capacity (RFC) finding; (3) misrepresenting evidence from the case record in the decision; (4) relying on the modified opinion of the consultative evaluating psychologist, Dr. Katherine Myers, Psy.D., rather than the opinion she initially rendered; (5) relying on the testimony of the medical expert, Dr. Terry R. Schwartz, Psy.D.; and (6) improperly assessing plaintiff's credibility.

### 1. The ALJ did not err by rendering a decision despite plaintiff's absence from the hearing.

Plaintiff argues that the ALJ erred by failing to find "good cause" for reopening the ALJ hearing after plaintiff failed to appear at the scheduled time, and by then basing his decision on the evidence otherwise presented and available at the hearing.  (Tr. 24).  The Commissioner responds that the ALJ reasonably determined that plaintiff did not establish good cause for holding a second hearing.

The record shows that prior to the ALJ hearing, plaintiff signed an "Acknowledgment of Receipt (Notice of Hearing)," which he dated September 22, 2010.  (Tr. 165).  Plaintiff checked a box indicating that he would be present at the hearing scheduled for October 13, 2010 at 3:30 p.m., and that he would immediately notify the agency if an emergency arose after he mailed the

6

form and he could not be present. (*Id.*). The notice cautioned plaintiff: "YOUR REQUEST FOR HEARING MAY BE DISMISSED IF YOU DO NOT ATTEND THE HEARING AND CANNOT GIVE A GOOD REASON FOR NOT ATTENDING."

Plaintiff failed to appear at the hearing. (Tr. 47). Plaintiff's counsel explained that she did not know the reason for plaintiff's absence. (Tr. 49). She stated that she had telephoned plaintiff's house and spoken with his mother in Middletown, Ohio, who informed counsel that plaintiff "had left several hours ago" and "[s]he was a bit concerned." (*Id.*). The ALJ stated that he would issue a notice to show case and asked counsel if she had any objection to the ALJ taking evidence at that time, to which counsel did not voice any objection. (*Id.*).

The ALJ issued a notice to show cause for failure to appear to plaintiff on October 19, 2010. (Tr. 171). The notice informed plaintiff that "[t]o show good cause, you must send me a written statement with a good reason why you did not appear at the time set for the hearing." (*Id.*). Plaintiff submitted a letter in response in which he stated that he had left his house the day of the hearing at 8:00 a.m. in the hopes of selling some items, and he met some men who were interested in "vintage fine swiss watches." (Tr. 291). Plaintiff explained he left a Pepsi he was drinking unattended on his truck for "just a minute. Yet it was enough time for one of them to put a 'MIKKIE' in." (*Id.*). Plaintiff stated he began to feel dizzy; he developed tunnel vision and everything went dark; and the next thing he remembered was waking up in the driver's seat of his truck soaking wet from having left the window down. (*Id.*). Plaintiff stated that he later learned it had rained on the 13th, and whatever one of the men had given him had "made [him] sleep through getting rained on." (*Id.*). Plaintiff stated he called home and found out it was the afternoon of the 14th, and his mother told him he "had been reported missing." (*Id.*). Plaintiff

7

closed by asking that the ALJ consider his case again and stated he did not want to be denied the opportunity to proceed before the ALJ "because some low life robbed me." (Tr. 292).

In his decision, the ALJ found there was not good cause to reopen the evidentiary hearing. (Tr. 24). The ALJ briefly recounted plaintiff's story set forth in the show cause response and stated that in spite of claiming that he had been robbed while he was allegedly drugged, plaintiff did not provide any evidence to support his story, such as a police report. (*Id.*). The ALJ therefore decided to base his decision on the evidence presented and available during the October hearing. (*Id.*).

Plaintiff argues that by relying on his failure to submit evidence to support his excuse for not appearing at the hearing, the ALJ in effect imposed an unwarranted and unfair heightened burden of proof on him to show cause. Plaintiff alleges that the show cause order did not request that plaintiff submit supporting documentation, and the ALJ never contacted plaintiff or his counsel after receiving the response to the show cause order to request such documentation. Further, plaintiff contends that the ALJ's finding that he was not an "essential witness" was incorrect because pain is a "key factor" in his disability claim, making it particularly important for the ALJ to be able to observe plaintiff and question him directly, and the VE was unable to obtain clarification from plaintiff at the hearing about discrepancies in the record regarding his past relevant work. (Doc. 12 at 12, citing Tr. 68; *Stoner v. Secretary of Health and Human Services*, 837 F.2d 759, 761 (6th Cir. 1988)).

The Commissioner argues that the ALJ reasonably rejected plaintiff's excuse for failing to appear for the hearing as "both implausible and incredible." (Doc. 18 at 4). The Commissioner also notes that although plaintiff argued before the Appeals Council that the ALJ

8

held him to an unfair standard by faulting him for not submitting supporting documentation of the alleged assault and robbery, plaintiff did not avail himself of the opportunity to submit supporting documentation to the Appeals Council. (*Id.*, citing Tr. 294-96). Finally, the Commissioner argues that any confusion regarding plaintiff's past work is immaterial because the ALJ determined that plaintiff could not perform any of his past work and transferability of skills was not an issue (Tr. 38-39), and the ALJ's inability to observe plaintiff and question him as to his pain allegations does not cast doubt on the validity of the ALJ's credibility assessment. (*Id.* at 5-7).

The Social Security Act, 42 U.S.C. § 405(b), and due process require that a claimant receive meaningful notice and an opportunity to be heard before a claim for disability benefits can be denied. *Stoner*, 837 F.2d at 760-761 (citing *Parker v. Califano*, 644 F.2d 1199 (6th Cir. 1981)). The Social Security regulations specifically provide: "Any party to a hearing has the right to appear before the administrative law judge . . . to present evidence and to state his or her position. A party may also make his or her appearance by means of a designated representative. . . ." 20 C.F.R. §§ 404.950(a), 416.1450(a). A claimant can waive his right to appear at the hearing. 20 C.F.R. §§ 404.950, 416.1450.

Section 1-2-425(D) of the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"[4]), entitled "Claimant's Representative Appears at Hearing Without the Claimant," applies in a situation such as that presented here where counsel appears on the claimant's behalf at the hearing and the claimant does not appear. Section 1-2-425(D)

---

[4] It is not clear whether the HALLEX provisions are independently legally enforceable in the Sixth Circuit, but the Sixth Circuit has given effect to some of those provisions. *Hamilton v. Astrue*, No. 5:09cv202, 2010 WL 411322, at *6 (N.D. Ohio Jan. 28, 2010) (citing *Suciu v. Barnhart*, 405 F.Supp.2d 874, 880 (M.D. Tenn. 2005) (citing *Kirves v. Callahan*, 113 F.3d 1235, table, 1997 WL 210813 (6th Cir. Apr. 25, 1997); *Adams v. Massanari*, 55 F. App'x 279, 283-87 (6th Cir. 2003)).

provides: "If a claimant's representative appears at a scheduled hearing without the claimant, the ALJ must determine whether the claimant is an essential witness for a proper determination of the case." *See also Hamilton*, 2010 WL 411322, at *5. If the ALJ determines that the claimant is an essential witness, the ALJ should offer to postpone the hearing so that the claimant may appear. *Id*. (citing § 1-2-425(D)). If the ALJ does not consider the claimant to be an essential witness, the ALJ should proceed with the hearing and issue his decision. *Id*. (citing § 1-2-425(D)).

Here, plaintiff received meaningful notice and an opportunity to be heard before the Commissioner denied his claim for benefits. There is no dispute that plaintiff received notice of the hearing. (Tr. 165). Although the ALJ gave counsel an opportunity to object to proceeding with the hearing in plaintiff's absence, counsel voiced no objection. (Tr. 49). Following the hearing, the ALJ gave plaintiff an opportunity to show good cause for failing to appear at the hearing and for the ALJ to reopen the hearing. (Tr. 171). The ALJ reasonably rejected the explanation plaintiff gave for failing to appear at the hearing as unworthy of belief. Although the ALJ did not direct plaintiff to submit documentation to substantiate his claim that he had been drugged and robbed the day of the hearing, nothing precluded plaintiff from submitting to the ALJ (or to the Appeals Council) verification of the unlikely criminal attack which allegedly prevented him from attending the hearing.

Further, there is no indication in the record that plaintiff was an essential witness for proper resolution of his disability claim. Contrary to plaintiff's argument, his testimony was not necessary to clarify the nature of his past relevant work given that the ALJ determined he could not perform any of his past relevant work and that transferability of skills was not material to the

10

disability determination. (Tr. 38-39). Moreover, for reasons explained more fully in connection

with plaintiff's sixth assignment of error, although plaintiff's subjective complaints include

severe and disabling pain, it was not essential that the ALJ be able to observe and question

plaintiff directly under the facts of this case given the dearth of objective findings and record

evidence corroborating these complaints. This case is thus distinguishable on its facts from

*Stoner*, 837 F.2d at 760-61, where a knowing waiver of the right to participate in the hearing was

not found because counsel was given the choice to either participate in the hearing in the

plaintiff's absence or face dismissal of the claim; the finding of non-disability was suspect given

that the claimant was in an immobilizing full-body cast on the hearing date and was to remain in

the cast for at least six months; and pain was a "key factor" in the plaintiff's claim, so that it was

particularly important that the ALJ be able to observe the plaintiff and question him directly.

Thus, under the circumstances shown by the record, the ALJ did not err by deciding to

proceed with the hearing in plaintiff's absence but with his attorney present, and by finding that

plaintiff had failed to show good cause for reopening the hearing. Plaintiff received meaningful

notice and an opportunity to be heard. Plaintiff's first assignment of error should be overruled.

**2. The ALJ did not err in assessing plaintiff's "severe" and non-severe impairments.**

Plaintiff alleges as his second assignment of error that the ALJ failed to characterize

several of his impairments as "severe," failed to account for the limitations imposed by those

impairments in the RFC finding, and failed to consider the combined effects of his severe and

non-severe impairments in formulating the RFC. Specifically, plaintiff alleges the ALJ should

have characterized the following impairments as "severe" impairments: (1) neck pain with

headaches; (2) history of facial and orbit fractures; (3) memory problems due to a closed head

11

injury; (4) Barrett's esophagus causing significant dysphagia; (5) chronic diarrhea from microscopic colitis and irritable bowel syndrome (IBS); and (6) hypertension. (Doc. 12 at 13).

A severe impairment or combination of impairments is one that significantly limits the physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921. Basic work activities relate to the abilities necessary to perform most jobs. 20 C.F.R. §§ 404.1521(b), 416.921(b). In the physical context, a severe impairment or combination of impairments means a significant limitation upon a claimant's ability to walk, stand, sit, lift, push, pull, reach, carry, handle, see, hear or speak. *See* 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). A severe impairment in the mental context can include a significant limitation on the ability or aptitude to understand, carry out and remember simple instructions. *Id.* Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element that plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357-58 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

Under the Social Security Regulations, once the ALJ determines a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 416.923. If the ALJ considers all of a claimant's impairments (both severe and non-severe) in determining the claimant's RFC, the ALJ's failure to characterize certain impairments as "severe" at step two of the sequential evaluation is legally irrelevant and constitutes harmless error. *Anthony v. Astrue,* 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Here, the ALJ thoroughly considered the record evidence pertaining to the conditions identified by plaintiff as "severe" impairments. Substantial evidence supports the ALJ's findings that these impairments do not constitute "severe" impairments within the meaning of the Social Security rules and regulations. The record does not include objective findings documenting a severe neck impairment or severe headaches. Plaintiff alleges that his treating physician, Dr. Jennifer Winters, D.O., has "consistently observed spasm" in his neck (Doc. 12 at 14), but he points to only two records from August 2008 and October 2008, shortly following his June 2008 motor vehicle accident, where Dr. Winters made findings of spasm. (Tr. 390, 8/11/08- "There is increased spasm of the C/L spine with some joint dysfunctions noted"; Tr. 389, 10-28-08- "He still has some facial deformity and some increased spasm in the C spine."). Moreover, during the October 2008 examination, Dr. Winters found that plaintiff had good range of motion, and there were no motor or sensory deficits. (Tr. 389). Dr. Winters made no further findings related to plaintiff's neck in these examinations and she imposed no functional limitations of any type. In addition, although plaintiff asserts that since the June 2008 accident he has reported daily

13

headaches and dizziness, which purportedly put him at risk of falls, the portion of the record

plaintiff cites to document these complaints does not relate to those matters. (Doc. 12 at 14,

citing Tr. 399-410). In fact, an EKG and a CT scan of the head performed in December 2008

were unremarkable except for the facial CT, which revealed comminuted[1] fractures of the nasal

septum and left orbit and a fracture of the left maxillary sinus. (Tr. 373). Plaintiff has not

pointed to any evidence showing that his neck pain and headaches are more than slight

abnormalities and that these conditions impose any functional limitations so as to constitute

"severe" impairments.

　　Nor has plaintiff cited evidence to support his allegation that alleged "memory loss

and the untreated fractures to his face and eye socket obviously have 'more than a minimal'

impact on Plaintiff's ability to work" because they: (1) limit him to "simple (1-2 step) tasks" and

cause "difficulty staying on task due to pain and memory problems," and (2) have a negative

effect on plaintiff's self-image and thereby make it difficult for him to interact with others. (Doc.

12 at 13-14, citing Tr. 327, 389-90, 435-36). The ALJ reasonably relied on the medical evidence

of record to find that plaintiff's allegations of severe memory loss were not supported. (Tr. 34).

This evidence included the consultative evaluation of Dr. Myers, whose test scores showed that

plaintiff's immediate and working memory fell within the low average range and his general

memory fell within the borderline range (Tr. 341); the testimony of the ME, Dr. Schwartz, who

agreed with the assessment of Dr. Myers (Tr. 54-56); and Dr. Winters' notation in her November

2008 report that plaintiff's cognitive status was "good." (Tr. 351). Further, Dr. Winters reported

"[n]o psychiatric deficits" on examination in October 2008, four months after his motor vehicle

---

[1] A comminuted fracture is one in which the bone is splintered or crushed. http://medical-
dictionary.thefreedictionary.com/comminuted+fracture (last accessed August 11, 2013).

accident. (Tr. 389). In addition, the evidence does not show that plaintiff's facial fractures have imposed functional limitations of a sustained nature. To the contrary, although Dr. Winters noted some vision loss and facial deformity in the months following the auto accident, she reported that plaintiff was able to perform sedentary work in October 2008 and that he needed only two months off work due to the facial fractures, with additional time off for reconstructive surgery. (Tr. 389-90). Thus, the ALJ did not err by failing to find plaintiff's alleged memory loss and untreated facial fractures to be "severe" impairments.

Substantial evidence likewise supports the ALJ's determination that plaintiff's gastrointestinal problems, including GERD with Barrett's esophagus, a hiatal hernia, and microscopic colitis/IBS, were not "severe" impairments. Plaintiff argues that the ALJ erred by failing to characterize his gastrointestinal problems as "severe" and to account for limitations resulting from these impairments in the RFC finding because these conditions "can cause a need for frequent, unscheduled bathroom breaks and would therefore affect one's ability to maintain work." (Doc. 12 at 14) (emphasis in original). However, plaintiff's argument is speculative and is not supported by citations to the medical evidence. Plaintiff was diagnosed with mild chronic colitis in December 2003 (Tr. 409), and the record contains frequent references to plaintiff's gastrointestinal condition, but documentation as to the actual frequency or severity of the symptoms is lacking. Substantial evidence supports the ALJ's determination that plaintiff's gastrointestinal condition was not shown to cause any functional limitations, including the need for frequent, unscheduled bathroom breaks, as alleged by plaintiff.

Finally, the ALJ did not err by finding plaintiff's hypertension to be a non-severe impairment. (Tr. 30). Plaintiff has not pointed to evidence of any debilitating symptoms

15

resulting from his hypertension or of functional limitations imposed by this condition.

The evidence shows that the ALJ thoroughly considered the impairments plaintiff identifies as "severe" but which the ALJ concluded were non-severe impairments. The ALJ's decision to characterize those impairments as non-severe is substantially supported by the record evidence. Further, the ALJ considered all impairments, both "severe" and non-severe, in the remaining steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 416.923. Plaintiff has not shown that those impairments resulted in further limitations on his ability to work. Plaintiff's second assignment of error should be overruled.

### 3. The ALJ did not misrepresent the evidence in the case record.

Plaintiff alleges as his third assignment of error that the ALJ committed error by misrepresenting the record in numerous respects, and by picking and choosing only the evidence that supported the ALJ's position.

The ALJ errs by selectively parsing the medical records to find evidence of non-disability and ignoring evidence that warrants a finding of disability. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) (noting ALJ's conclusion appeared to be "grounded in a myopic reading of the record combined with a flawed view of mental illness"); *Germany-Johnson v. Commissioner of Social Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (noting the ALJ "was selective in parsing the various medical reports"). However, plaintiff has not shown that the ALJ committed such an error in this case. To the contrary, plaintiff's counsel mischaracterizes the ALJ's decision in several respects, or otherwise simply disagrees with the ALJ's interpretation of the evidence presented and asks the Court to draw its own inferences. As explained below, the ALJ did not misrepresent the evidence as alleged by plaintiff's counsel.

16

First, plaintiff's counsel alleges that the ALJ stated plaintiff scored 15 on the Glasgow Coma Scale at the time of his June 15, 2008 accident but ignored the fact that a score of 15 is below normal and that the EMTs who discovered plaintiff after the accident determined his score was 10 (Tr. 27, citing Tr. 311). (Doc. 12 at 15). However, a review of the emergency room records shows that the ALJ accurately stated that emergency medical personnel noted "some evidence of a closed head injury with a Glasgow Coma Scale score of 15" and that they "suspected a concussion." (Tr. 27, citing Tr. 313, 320-21). Plaintiff's counsel's argument that the ALJ erred in his summation of the emergency room records is baseless.

In addition, plaintiff's counsel quotes the ALJ as stating: "Dr. Winters found evidence of spasm in August 2008, but no other records showed evidence of spasm" (Doc. 12 at 15, citing Tr. 28), which is alleged to be erroneous because plaintiff purportedly exhibited muscle spasm on several other occasions. (*Id.*, citing Tr. 389, 391, 401). Plaintiff's counsel misquotes the ALJ, who actually stated: "[In August 2008], Dr. Winters did note some cervical and lumbar spine spasm along with some joint dysfunction, although *later* records do not make further mention of spasms [Tr. 390]." (Tr. 28) (emphasis added). There is one (not several) subsequent mention of spasm in October 2008[6] (Tr. 389), but the ALJ's failure to acknowledge this single episode of spasm is harmless error given the overall lack of objective and clinical findings to support plaintiff's musculoskeletal complaints.

Plaintiff's counsel further alleges that the ALJ misstated the record by implying plaintiff was able to perform housework independently (Tr. 29), when the record shows plaintiff reported to Dr. Myers that he was not doing as much housework as he used to and he no longer had friends. (Doc. 12 at 15, citing Tr. 341). Counsel has not shown how plaintiff's statements are

---

[6] The other records cited by plaintiff pre-date August 2008. (Tr. 391, 401).

inconsistent with the ALJ's finding. Plaintiff's counsel further contends the ALJ misstated the record by declining to find that plaintiff's psychological conditions worsened following his automobile accident since plaintiff explicitly reported such a decline to Dr. Myers and his processing speed and visual motor speed were in the borderline range following the accident. (Doc. 12 at 15, citing Tr. 337, 340-41). Plaintiff has not shown that the ALJ misstated the record in this regard, only that he disagrees with the ALJ's assessment of his credibility and the ALJ's evaluation of the evidence.

In addition, plaintiff alleges that the ALJ misrepresented his problems with diarrhea by attempting to link the problem to anxiety; ignoring evidence that he had trouble swallowing his medicine in May 2008 and Dr. Winters was concerned about his Barrett's esophagus and a potential stricture (Tr. 391); and failing to mention that Dr. Winters discussed plaintiff's problems with diarrhea in each of the 2007 office visits (Tr. 391-92). (Doc. 12 at 16). While it appears the ALJ may have misunderstood plaintiff's counsel as representing at the hearing that anxiety was the sole cause of plaintiff's diarrhea[7] (Tr. 34), any error in this regard was harmless as the record does not document the severity of plaintiff's diarrhea or functional limitations resulting from plaintiff's gastrointestinal issues.

Plaintiff also contends that the ALJ misstated the conclusions of the Bureau of Vocational Rehabilitation (BVR). Plaintiff contends the BVR acknowledged he would be able to return to work, possibly at the medium level of exertion, but not before receiving retraining and specialized physical therapy for dizziness. (Doc. 12 at 16, citing Tr. 431-34). According to the ALJ, the BVR records indicated that both plaintiff and the rehabilitation counselors believed

---

[7]Counsel stated that "underlying microscopic colitis" causes plaintiff's diarrhea, but that "[a]nxiety has been seen to affect his diarrhea." (Tr. 52)

plaintiff was capable of returning to work, as the counselors noted plaintiff has the potential to return to a full range of jobs at the medium, light and sedentary levels, and that he could possibly return to heavy exertional work with physical therapy and work conditioning. (Tr. 36, citing Tr. 440). The ALJ accurately summarized the BVR assessment and did not misstate the record in this respect.

Plaintiff's counsel further contends that the ALJ mischaracterized the evidence on plaintiff's balance issues. Counsel notes that the ALJ stated that plaintiff's balance impairment was mild and cited a report that rated his dizziness as 2/10 and a record that showed he was above the cutoff on a scale for risk of falling. (Doc. 12 at 16, citing Tr. 418-29). However, counsel contends the ALJ ignored other portions of the record showing that his dizziness is worst when he tries to "get up" and that on a timed test it took him 11 seconds to "get up and go," which counsel characterizes as "an inordinately long amount of time." (*Id.*). Plaintiff's counsel does not cite to specific portions of either the ALJ's decision or a medical opinion that show the ALJ ignored evidence of a severe balance problem or that the ALJ misrepresented the record in any sense.

In addition, plaintiff's counsel contends that the ALJ improperly construed Dr. Winters' characterization of plaintiff as "healthy-appearing" in September 2010 as an opinion that plaintiff was capable of performing work, when Dr. Winters actually meant plaintiff did not appear to have a systemic illness or infection. (Doc. 12 at 17, citing Tr. 28). However, there is no mention of Dr. Winters' characterization of plaintiff as "healthy-appearing" on the cited page of the ALJ's decision. Moreover, although Dr. Winters made this observation in a September 2010 treatment note, she did not explain that "healthy appearing" meant only the absence of a "systemic illness

19

or infection." (Tr. 504). Thus, plaintiff has not shown the ALJ misconstrued the record in this sense.

Plaintiff's counsel's remaining arguments as to how the ALJ purportedly misstated the record are equally baseless. Counsel has simply posited her own interpretations of the evidence and theories as to the functional limitations plaintiff's impairments might impose. Counsel alleges that plaintiff's over-reliance on visual cues when trying to balance means that he needs to see his feet while transitioning into a standing position or while walking, "providing yet another reason why it is difficult for Plaintiff to hold or carry things while standing or walking" (Doc. 12 at 17, citing Tr. 418-29); his diarrhea and swallowing problems affect his ability to work because he would need more frequent bathroom breaks, he would need time to clear anything that got stuck in his throat, and "that causes a choking sensation which would certainly increase his anxiety and be a distraction" (*Id.* at 17); his test results on the psychological evaluation indicate he has a "learning disability" (*Id.*, citing Tr. 341), although the term "learning disability" appears nowhere on that page of the record; and the C1 dysfunction reported by Dr. Winters on the right side of plaintiff's neck in September 2010 was one possible cause of plaintiff's frequent headaches (*Id.*, citing Tr. 504), although Dr. Winters' treatment notes for that date make no mention of headaches. Counsel's arguments, unsupported by the medical and other record evidence, do not substantiate plaintiff's claim that the ALJ misstated the record in any respect.

For these reasons, plaintiff's argument that the ALJ erred by picking and choosing evidence that supported his opinion and ignoring evidence that did not is not substantiated by the record. The ALJ thoroughly reviewed the evidence and explained the basis for the RFC finding and the non-disability determination. Plaintiff's third assignment of error should be overruled.

20

#### 4. The ALJ did not err by relying on Dr. Myers' modified opinion.

Plaintiff alleges as his fourth assignment of error that the ALJ erred by adopting the

modified assessment issued by the consultative examining psychologist, Dr. Myers, on December

5, 2008. (Tr. 372). Dr. Myers examined plaintiff at the request of the state agency on October

14, 2008. (Tr. 337-45). Plaintiff reported a history of anxiety and panic attacks, which were

exacerbated by his car accident in June 2008. (Tr. 337). Plaintiff reported that he was afraid to

leave the house frequently and that his social functioning had decreased since the accident. (Tr.

338). Dr. Myers diagnosed plaintiff with Major Depressive Disorder, recurrent, moderate and

Panic Disorder with Agoraphobia. (Tr. 342). She assigned him a GAF score of 51.[8] (*Id.*). Dr.

Myers opined that plaintiff was moderately impaired in his ability to relate to others; moderately

impaired in his ability to understand, remember, and follow instructions; moderately impaired in

his ability to withstand the stress and pressures associated with day-to-day work activity; and

markedly impaired in his ability to maintain attention, concentration, persistence and pace to

perform routine tasks. (Tr. 342-43).

Dr. James Raia, Ph.D., chief psychological consultant with the state agency, followed up

with Dr. Myers on December 1, 2008, at the request of the in-house psychologist reviewer to

resolve some apparent inaccuracies and inconsistencies between the clinical information and the

work-related conclusions. (Tr. 371). Dr. Raia stated that the "marked" limitation found by Dr.

Myers appeared to be "too severe" and inconsistent or in conflict with plaintiff's overall

---

[8] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American
Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The
GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and
occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of
severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with
clear expectation of death). *Id.* at 34. The DSM–IV categorizes individuals with scores of 51-60 are classified as
having "moderate" symptoms. *Id.* at 32.

functional capacity in light of his past work history up to the time of the June 2008 auto accident, his ADLs, and the fact that he was responsive to Dr. Myers. Dr. Raia noted that it appeared Dr. Myers may not be basing the "marked" limitation on plaintiff's entire mental functioning, but instead may be basing it on plaintiff's response to the specific psychological testing. Dr. Raia asked Dr. Myers to clarify her evaluation and send any necessary corrections or modifications to him in an addendum.

> Dr. Myers modified her evaluation in a letter dated December 5, 2008, explaining:

> In re-reviewing my report and the data available I believe that [plaintiff's] ability to maintain attention, concentration, pace, and persistence to perform routine tasks would be <u>moderately impaired</u> by his current psychiatric symptoms. Mr. Isaacs had clear difficulty with his ability to attend and concentrate, but even more difficulty with pace as he was extremely slow. However, the tasks presented to him during psychological testing are likely more difficult than simple routine tasks, and in reconsidering this as well as his day to day functioning, a modification to my original finding of markedly impaired appears warranted.

(Tr. 372) (emphasis in original).

The ALJ gave "significant weight" to Dr. Myers' assessment as modified. (Tr. 31-32). The ALJ thoroughly explained his reasons for adopting Dr. Myers' opinion that plaintiff was only moderately impaired in his ability to maintain attention, concentration, pace and persistence to perform routine tasks. (*Id.*). Plaintiff has not shown that the ALJ erred by crediting Dr. Myers' opinion as modified. Plaintiff does not point to an opinion by a treating or examining mental health provider that conflicted with Dr. Myers' findings and that was entitled to greater weight. Plaintiff argues only that Dr. Myers' initial assessment was "more accurate" and he proffers several theories, unsubstantiated by any medical opinion evidence, as to why Dr. Myers' modified opinion is flawed. (Doc. 12 at 19-20). The decision as to the weight to afford Dr.

Myers' opinions rested with the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

Plaintiff's fourth assignment of error should be overruled.

### 5. The ALJ did not err by relying on the ME's testimony.

Plaintiff alleges as his fifth assignment of error that the ALJ erred by affording

"significant weight" to the testimony of the ME, Dr. Schwartz. Plaintiff argues that the ALJ was

not entitled to rely on the ME's testimony provided in this matter because Dr. Schwartz did not

flesh out the record but simply "regurgitate[d]" the opinions of the "treating and examining

psychologists" and summarized Dr. Myers' consultative evaluation and findings. (Doc. 12 at

20).

Dr. Schwartz, after a review of the full record, concluded that the November 30, 2008

mental RFC assessment and psychiatric review technique issued by the state agency reviewing

psychologist, Dr. Roseann Umana, Ph.D. (Tr. 353-56, 367), accurately described plaintiff's

mental limitations and functional capacities. (Tr. 55-56). Dr. Schwartz testified that he based his

opinion on all of the files of record, including the opinion of the consultative examining

psychologist, Dr. Myers, as modified (Tr. 337-45, 371-72), and the BVR records (Tr. 417-97).

Plaintiff has not pointed to an opinion by a treating mental health provider or to any medical

opinion evidence that contradicts the opinions of these examining and reviewing psychologists.

Medical expert testimony, like that given by Dr. Schwartz, which is consistent with the evidence

of record can constitute substantial evidence to support the Commissioner's decision. *Atterberry*

*v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989). Therefore, the ALJ did

not err by giving significant weight to Dr. Schwartz's opinion.

23

Plaintiff also argues that he was harmed by Dr. Schwartz's alleged failure to provide coherent answers to his counsel's questions on cross-examination concerning the relevance of certain psychological test scores. Plaintiff contends that as a result, the ALJ lacked an accurate understanding "of how the sequelae of his head injury have affected his pace (something which Dr. Myers opined is markedly impaired)." (Doc. 19 at 4). This argument overlooks the fact that Dr. Myers modified her assessment of plaintiff's mental functioning and concluded that plaintiff's ability to maintain the pace required to perform routine tasks was only *moderately* impaired. (Tr. 372). Given that Dr. Schwartz's testimony was consistent with Dr. Myers' opinion as modified, and because both Dr. Schwartz and the ALJ were entitled to rely on the modified opinion for the reasons explained in connection with plaintiff's fourth assignment of error, any failure by Dr. Schwartz to provide further guidance in this particular area was harmless error.

Accordingly, the ALJ did not err by relying on Dr. Schwartz's opinion, together with the opinions of the other examining and reviewing psychologists of record. Plaintiff's fifth assignment of record should be overruled.

### 6. The ALJ did not err in assessing plaintiff's credibility.

Plaintiff alleges as his sixth assignment of error that the ALJ erred in assessing his credibility. Plaintiff contends that the ALJ could not properly analyze his credibility because he was neither given an opportunity to testify on his own behalf regarding his numerous ailments, side effects from medication, pain, and depression, nor given an opportunity to address any of the supposed inconsistencies the ALJ found in the record. Plaintiff further contends that the ALJ committed a number of errors in assessing his credibility.

24

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id*. at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id*.

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of the plaintiff's doctors. *Felisky v. Bowen,* 35 F.3d 1027, 1040 (6th Cir. 1994). Additional specific factors relevant to the plaintiff's allegations of pain include his daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate his pain or other symptoms; treatment other than medication plaintiff has received for relief of his pain; and any measures the plaintiff uses to relieve his pain. *Id*. at 1039-40; 20 C.F.R. §§ 404.1529(c), 416.929(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish he is disabled, *Duncan,* 801 F.2d at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. § 404.1529(a), 416.929(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be

expected to produce the pain or other symptoms alleged and which, when considered with all of

the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id.*

Here, the ALJ's credibility determination is substantially supported by the record and is

entitled to deference. As explained above, plaintiff was given the opportunity to be present at the

hearing to testify, and the ALJ reasonably determined that plaintiff did not show good cause for

failing to appear at the hearing. Further, the ALJ thoroughly reviewed the evidence of record and

made extensive findings regarding plaintiff's credibility in connection with his determination that

plaintiff retained the RFC to perform a range of medium work with non-exertional restrictions to

account for his mental impairments. (Tr. 32-36).

First, the ALJ reasonably discounted plaintiff's complaints of severe pain as inconsistent

with the record evidence, including the absence of most of the objective signs typically

associated with chronic, severe pain such as muscle atrophy, spasm, rigidity or tremor, as well as

a lack of positive imaging findings showing pathology that correlated with his complaints of

pain. (Tr. 35-36). Plaintiff contends the ALJ erred in this regard because Dr. Winters found

evidence of spasm, reduced range of motion, and spinal joint dysfunction "on multiple

occasions" (Doc. 12 at 27, citing Tr. 389-90, 399, 503-05), but in fact the portions of the record

cited disclose that Dr. Winters reported muscle spasm and "some joint dysfunctions" in August

of 2008 and muscle spasms once thereafter in October 2008, both shortly after plaintiff's June

2008 automobile accident. (Tr. 389-90). Further, plaintiff was reported to have "good" range of

motion in October 2008. (Tr. 389). The ALJ reasonably relied on the lack of objective findings

to find that plaintiff's complaints of severe chronic back pain were not fully credible. *See Jones*

*v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369-1370 (6th Cir. 1991) (reliable

26

objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption). In addition to the lack of objective evidence, the ALJ reasonably discounted plaintiff's allegations of disabling pain because the record shows plaintiff has not required in-patient treatment or frequent emergency room treatment for episodes of acute pain, his treatment has been conservative and non-aggressive, and Dr. Winters' treatment notes "are relatively benign" regarding plaintiff's assertions of constant pain. (Tr. 36, citing Tr. 389-93, 398-416, 502-05).

Moreover, the ALJ reasonably discounted plaintiff's complaints of allegedly disabling symptoms other than pain in light of the lack of objective findings. Substantial evidence supports the ALJ's findings that Dr. Winters' treatment notes do not reflect an urgent need for restroom breaks; the objective psychological findings did not document a finding of severe memory loss (Tr. 34, citing Tr. 337-45); and visual limitations were not documented (Tr. 34, citing Tr. 347-52).

The ALJ also reasonably determined that plaintiff's allegations of debilitating pain and symptoms were inconsistent with his reports of activities of daily living, which included evidence that he had been hiking as late as June 2008, and his report to Dr. Myers that reading was one of his main daily activities (Tr. 337-45), even though he reported problems with memory and reading in his disability application (Tr. 220). (Tr. 33, 36). *See Blacha v. Secretary of Health and Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990) (the ALJ may consider the plaintiff's household and social activities in evaluating the plaintiff's credibility). The ALJ was also entitled to rely on BVR records, which he reasonably found showed that both plaintiff and the rehabilitation counselors believed plaintiff was capable of returning to work, to question

27

plaintiff's credibility. (Tr. 36, citing Tr. 417-97). Plaintiff argues that the ALJ erroneously found his daily activities and aspirations for employment to be inconsistent with his complaints of pain because he performs his daily activities intermittently and the BVR did not find he could work competitively. (Doc. 12 at 25, citing Tr. 443-44). However, plaintiff cites no record evidence to show he must take breaks during his daily activities, and the BVR records confirming his employment potential lend support to the ALJ's credibility finding.

The ALJ also reasonably questioned plaintiff's credibility with respect to his presentation of his symptoms to Dr. Winters based on evidence of drug-seeking behavior (Tr. 389) and avoidance of blood testing (Tr. 390). (Tr. 36). Plaintiff offers several theories as to why the ALJ was not entitled to rely on this evidence to discount his credibility, but plaintiff has not shown any factual or legal error by the ALJ in this regard. Plaintiff's counsel cites no record evidence in support of the explanation she proffers for why plaintiff did not have his blood drawn. (Doc. 19 at 2). Further, the fact that plaintiff's treating physician noted drug-seeking behavior on only one occasion does not preclude the ALJ from relying on such evidence, particularly given that Dr. Winters indicated at that time that plaintiff's drug seeking may have been an ongoing issue. (Tr. 389).

As a final matter, plaintiff argues that the ALJ incorrectly found he was not credible based on supposed inconsistencies in his allegations in the record as to noncompliance and his lack of medical treatment. (Doc. 12 at 24, citing Tr. 35). Plaintiff alleges that the ALJ failed to take into account that his noncompliance with medications or doctor's visits was sometimes due to his inability to afford care. (Doc. 12 at 24, citing Tr. 327, 391-92, 401, 440, 499). However, it

does not appear that the ALJ discounted plaintiff's credibility on this basis.  Plaintiff's allegation of error in this regard is not well-taken.

Accordingly, the ALJ properly applied the two-part *Duncan* standard in evaluating plaintiff's subjective complaints of pain and other purportedly disabling symptoms.  The ALJ conducted a thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record, his reported daily activities, and other pertinent factors.  Substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff does not suffer from disabling pain and other symptoms.  Plaintiff's sixth assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: _8/12/13_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WILLIAM ISAACS,                                    Case No. 1:12-cv-591
     Plaintiff,                                    Barrett, J.
                                                   Litkovitz, M.J.

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.


### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).